Filed 12/4/23  P. v. Quintero CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>EDGAR ANDRES QUINTERO,<br><br>    Defendant and Appellant. | B321844<br>(Los Angeles County<br> Super. Ct. No. GA106202) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Teri Schwartz, Judge.  Affirmed.

Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Daniel C. Chang, Deputy Attorney General, for Plaintiff and Respondent.

Following a jury trial, defendant and appellant Edward Andres Quintero was convicted of seven sex offenses for the continuous sexual abuse of his child relative, S.B., over the course of several years. (Pen. Code, §§ 288.5, subd. (a), 288.7, subds. (a), (b).)[1] The jury also found true the allegation defendant personally inflicted great bodily injury on S.B. during the commission of continuous sexual abuse (§ 288.5, subd. (a), count 4) by infecting the child with genital herpes. (§§ 667.61, subds. (j)(1), (d), 12022.7, subd. (a).)

Defendant does not challenge the sufficiency of evidence supporting any of his underlying convictions. Instead, he challenges the sufficiency of evidence supporting the great bodily injury finding and argues the trial court erred by admitting testimony from S.B.'s treating physician concerning a laboratory report confirming the presence of genital herpes. Finally, defendant contends the trial court violated his Sixth Amendment right to a jury trial under *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*), by making findings of fact when imposing full, separate, and consecutive terms of imprisonment on two counts of sexual intercourse or sodomy with a child (counts 1 and 2).

We conclude admission of testimony on the laboratory report constituted harmless error. We reject defendant's remaining arguments and affirm the judgment.

---

[1] Subsequent references to statutes are to the Penal Code.

2

# FACTUAL AND PROCEDURAL BACKGROUND

## A. Prosecution Evidence

### 1. *Years' Long Sexual Abuse of S.B.*

The victim's mother, P.B., testified she was formerly related to defendant through marriage. Following her divorce from defendant's uncle, P.B. maintained contact with defendant. P.B.'s youngest daughter, S.B., was born in November 2010. In 2016, defendant drove to P.B.'s home once a month to pick up the child and her older sisters, B.H. and T.H., and he took them to his home to play with his sons. In the several years that followed, defendant picked up P.B.'s daughters more frequently, about once a week, and on occasion would have S.B. spend the night at his home.

S.B. testified that beginning in 2016 when she was five or six years old, she had more than 20 "uncomfortable" encounters with defendant inside his bedroom. Most of the encounters took place between 2016 and 2019.

S.B. testified the encounters followed a similar pattern. While alone, S.B. would lay on defendant's bed while defendant touched S.B.'s "private part" with his hands,[2] pulled down her pants, and had oral contact with her genitals. Defendant would then take off his pants and underwear, pull out his "private part," and place it in S.B.'s anus. During each encounter, defendant sodomized S.B. several times, and at times, defendant would place S.B.'s hands on his penis. Defendant's "private part" would sometimes slip out of S.B.'s anus and would touch her vagina.

---

[2] S.B. testified her "private part" referred to her vagina. At the time of trial, S.B. was 11 years old and learned the word "vagina" from the prosecutor.

S.B. would take a shower after the encounters "because there would be white stuff between [her] thighs."

In one encounter when S.B. was seven years old, the child said a "bad word" to her sister inside defendant's home. Defendant grabbed S.B. and took her to his bedroom, where he removed his and S.B.'s pants and underwear. Then, defendant orally copulated the child's genitals and inserted his penis inside her anus.

The last encounter S.B. could recall took place on or about June 26, 2019. As before, S.B. found herself locked inside defendant's bedroom. Defendant removed his pants and underwear, orally copulated S.B.'s genitals, inserted his penis in S.B.'s anus, and rubbed his penis against S.B.'s vagina in a "motion up and down." The encounter ended when P.B. arrived to pick up the child.

2. *Treatment for Genital Herpes*

On July 3, 2019, S.B. complained to her mother of having painful bumps on her genitals and experiencing pain whenever she urinated or defecated. Asked when she first noticed her anus was bleeding, S.B. responded, "Maybe months" before her initial complaint in July 2019. P.B. examined the child on July 3, 2019, and after seeing "a lot of eruptions" on S.B.'s genitals, P.B. took the child to her pediatric doctor, Dr. Pauline Jose.

Dr. Jose has practiced family medicine for approximately 17 years. Dr. Jose testified she saw S.B. on July 3, 2019, for complaints of burning and itching in her genital region. During an examination, Dr. Jose saw white discharge and over 11 blisters on S.B.'s genitals and anus. "Right away," Dr. Jose suspected the blisters and vesicular rash were caused by a herpes

4

or other sexually transmitted infection. To "confirm [her] suspicion," Dr. Jose took a urine sample and swab of the ruptured blisters and sent the culture to a laboratory. As the child denied having inappropriate sexual contact with another person, Dr. Jose informed P.B. of her findings and suggested P.B. speak with her daughter.

S.B. returned to Dr. Jose's medical office on July 10, 2019, and informed Dr. Jose she had been inappropriately touched. Dr. Jose's medical office prescribed S.B. an anti-viral medication used to treat herpes.

### 3. *Police Investigation*

On July 4, 2019, S.B. told her mother about the sexual abuse. The same day, P.B. took the child to a police station. Several officers escorted P.B. and S.B. to a nearby hospital for interviews and an evaluation.

Detective Marissa Farias and her colleague arrested defendant on July 24, 2019. In a recorded interview played for the jury, defendant told the detectives he contracted genital herpes 14 years earlier, around 2015. Defendant initially denied touching S.B. but later admitted he touched the child inappropriately one time around May 2019. In that incident, defendant pulled away S.B.'s underwear and rubbed his penis in between the child's vagina for about five minutes. Defendant also admitted to placing S.B.'s hand on his penis.

## B. Defense Evidence

Deputy Sheriff Luis Jimenez testified that on July 4, 2019, he interviewed S.B. at a local police station. During the interview, S.B. told officers defendant had been "doing bad things

5

to her since she was seven years old." According to S.B., defendant last touched the child on June 26, 2019.

Testifying in his defense, defendant denied placing his mouth and penis on or inside S.B.'s vagina or anus on June 26, 2019.

## C.    Information, Verdict, and Sentencing

By amended information, defendant was charged with four counts of sexual intercourse or sodomy with a child 10 years old or younger (§ 288.7, subd. (a), counts 1–2, 5–6), two counts of oral copulation with a child 10 years old or younger (§ 288.7, subd. (b), counts 3, 7), and one count of continuous sexual abuse of a child (§ 288.5, subd. (a), count 4). On the continuous sexual abuse count, the information further alleged defendant personally inflicted great bodily injury on S.B. within the meaning of section 12022.7, subdivision (a), and section 667.61, subdivisions (j)(1) and (d).

The information alleged a date range on each count. On counts 1 through 3, the information alleged defendant committed each offense on or between November 16, 2016, and November 16, 2017. On count 4, the information alleged defendant committed continuous sexual abuse on or between November 17, 2017, and June 25, 2019. On counts 5 through 7, the information alleged defendant committed each offense on or about June 26, 2019.

Trial commenced in June 2022. By general verdict, the jury convicted defendant on all counts and found true the allegations on count 4 that defendant, "in the commission and attempted commission of [continuous sexual abuse of S.B.], personally inflicted great bodily injury upon [S.B.], . . . within the

6

meaning of Penal Code sections 12022.7(a) and 667.61(j)(1) and (d)."

In July 2022, defendant was sentenced to life imprisonment without the possibility of parole for continuous sexual abuse (count 4), plus a full, separate, and overall consecutive term of 75 years to life for sexual intercourse or sodomy with a child (counts 1, 2, and 5).[3]

## DISCUSSION

Defendant raises several contentions challenging the great bodily injury enhancement finding on count 4. We address those contentions first before addressing his remaining claim challenging the imposition of full, separate, and consecutive indeterminate terms for sexual intercourse or sodomy with a child on counts 1 and 2.

### A.    The Great Bodily Injury Allegation

Section 667.61, subdivisions (j)(1), (c), and (d)(6), together mandate a sentence of life imprisonment without the possibility for parole for any person who commits an enumerated offense, including continuous sexual abuse of a child (§ 288.5), by personally inflicting "great bodily injury" on the victim in the commission of the offense in violation of section 12022.7. Section 12022.7, subdivision (f) defines "great bodily injury" as "a significant or substantial physical injury." After receiving an instruction on these principles (see CALCRIM No. 3160), the jury found the allegation on count 4 to be true.

---

[3]    The court imposed concurrent terms of 25 and 15 years to life on counts 3, 6, and 7.

Defendant challenges the true finding on the enhancement allegation, arguing (1) admission of Dr. Jose's testimony about the contents of the laboratory report confirming S.B. contracted genital herpes constituted inadmissible hearsay in violation of the confrontation clause; and (2) insufficient evidence supports the finding defendant personally inflicted S.B. with herpes during the period of continuous sexual abuse in count 4.

1.    *Relevant Background*

Prior to opening statements, defense counsel objected to Dr. Jose's anticipated testimony about a formal diagnosis of genital herpes, arguing the testimony would be based on "test results that led to the diagnosis" in violation of *People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*).  The court overruled the objection but agreed to admonish the jury the laboratory results would not be offered for their truth.

At a sidebar conference during Dr. Jose's testimony, defense counsel objected to a question regarding Dr. Jose's diagnosis of S.B., because "[Dr. Jose] cannot render an opinion that [S.B.] has herpes or a diagnosis of herpes without test results."  The court replied Dr. Jose could rely on laboratory test results "as long as it is something that is a reliable source of information that doctors rely on in forming their opinions.  [¶] And, again, the jury will be admonished that what she relied on is not being offered for the truth."

Following sidebar, the prosecutor asked Dr. Jose to opine on S.B.'s diagnosis as of July 3, 2019, when the child first came to her medical office.  In reply, Dr. Jose testified her "suspicion was high" the vesicular rash on S.B.'s genitals had been caused by herpes, as it was "the most common cause" of those symptoms.

8

Dr. Jose took a swabbed culture and sent it to a laboratory to confirm her suspicions. In a brief period of silence between questions, Dr. Jose interjected, "And may I just add, yes, aside from the cultures coming back positive for herpes -- . . . ." Defense counsel objected to Dr. Jose's statement. The court sustained the hearsay objection and struck Dr. Jose's statement.

Dr. Jose was then asked to render an opinion on S.B.'s diagnosis as of July 10, 2019, during the child's second visit. Dr. Jose stated S.B. had contracted herpes based in part on the laboratory test coming "back positive for herpes." Defense counsel objected to the statement as hearsay, and the court admonished the jury as follows: "I am going to remind you that this information is not being admitted for the truth of what the lab result was. You can consider it as something that either supports or explains the doctor's opinion."[4] Dr. Jose then testified her opinion had also been based on an emergency room report written during an examination at the direction of police, as well as Dr. Jose's personal observations of S.B.'s genitals on July 3, 2019. In pictures taken of S.B.'s vagina and anus shown at trial, Dr. Jose identified blisters or lesions that were "characteristic of herpes simplex infection." Dr. Jose stated genital herpes is an incurable disease.

On cross-examination, Dr. Jose acknowledged she could not make a "confirmatory diagnosis" of S.B. on July 3, 2019, without laboratory results of the swabbed culture. Dr. Jose did not work

---

[4]     Among the various instructions provided, the jury was instructed to disregard any "testimony stricken from the record" and that "certain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and for no other. [¶] This includes: [¶] The lab report referenced by Dr. Jose."

9

at the laboratory where she sent the swabbed culture. Dr. Jose was aware of false positive test results.

Following Dr. Jose's testimony, the prosecution called Toyetta Buekes, a nurse practitioner and director of a sexual response team center, to testify. Based on her extensive practice diagnosing and treating patients for herpes, Buekes was able to recognize herpes lesions and ulcers on sight. Buekes testified genital herpes is spread either by oral contact to the genitals or genital contact from a person infected with the virus. In photographs taken of S.B.'s genitalia, Buekes identified genital herpes and lesions.

Throughout the remainder of trial, defense counsel made a motion for mistrial based on Dr. Jose relaying case-specific hearsay in the laboratory report. The court deferred ruling on the motion, as the prosecutor intended to lay a foundation for admitting the laboratory report as a business record. After learning the prosecutor no longer intended to admit the laboratory report, the court addressed the pending motion for mistrial. Despite finding Dr. Jose relayed case-specific hearsay by testifying the laboratory results were "positive," the court denied the mistrial motion, finding the results would not be used to prove the enhancement allegation but as "circumstantial evidence of what happened." In addition, the court noted other admissible evidence informing Dr. Jose's preliminary opinion on July 3, 2019, and defendant's admission to having sexual contact with S.B. while infected with herpes.

Following the prosecutor's case-in-chief, defense counsel moved under section 1118.1 to dismiss the great bodily injury enhancement for lack of a conclusive diagnosis. The court denied

10

the motion, finding Dr. Jose's personal observations sufficient to charge the enhancement to the jury.

During closing argument, the prosecutor argued the great bodily injury allegation "means the herpes. Any significant and substantial injury." Based on Dr. Jose's personal observations and medical records showing a formal diagnosis of "herpes viral infection" on July 10, 2019, the prosecutor argued the enhancement allegation on count 4 should be found true beyond a reasonable doubt. In her closing argument, defense counsel argued there was "no medical or testimonial proof that [S.B.] was diagnosed with herpes." Counsel further argued that because the enhancement allegation "attached [only] to count 4 where there is a period of time of November 17, 2017 and June 25, [2019,] they have to prove to you beyond a reasonable doubt [S.B.] contracted herpes during that time period and no other date." Absent any such proof, defense counsel requested the jury find the allegation not true. In rebuttal argument, the prosecutor argued S.B. would never have gone to the doctor "[h]ad it not been for the pain and bleeding [the herpes] caused" S.B. Noting the number of times S.B. was sexually abused and the week difference between the last date of abuse (June 26) and when Dr. Jose first saw S.B. (July 3), the prosecutor argued it was reasonable to infer "the herpes was contracted" during the period of continuous sexual abuse.

2.    *Dr. Jose's Testimony Did Not Infringe on Defendant's Constitutional Right of Confrontation*

Defendant contends Dr. Jose's testimony concerning an "unsubstantiated lab analysis of a culture" taken of S.B.'s genitals violated his right to confront the witnesses against him

11

under the Sixth Amendment to the United States Constitution and *Crawford v. Washington* (2004) 541 U.S. 36 (*Crawford*). We disagree.

> a.  *Governing Principles*

In *Crawford*, the high court recognized the Sixth Amendment guarantees a criminal defendant "'the right . . . to be confronted with the witnesses against him.'" (*Crawford*, *supra*, 541 U.S. at pp. 40, 42, 68–69.) Consequently, an out-of-court statement that is "testimonial" cannot be admitted into evidence over the defendant's objection unless the person who made the statement is unavailable to testify and the defendant had a prior opportunity for cross-examination. (*Ibid*.) In reaching this conclusion, the high court provided no definition of the term "testimonial." (*Id.* at p. 68.)

Through various decisions, the high court provided examples of "testimonial" statements invoking the protections of *Crawford*. In *Davis v. Washington* (2006) 547 U.S. 813, the court found statements made in the course of police interrogation "under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency" were not testimonial. (*Id.* at p. 822.) The high court reasoned the statements would be testimonial "when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."[5] (*Id.* at p. 822.)

---

[5]  Concurring and dissenting in part, Justice Thomas stated the "plain terms of the 'testimony' definition [in *Crawford*] necessarily require some degree of solemnity before a statement can be deemed

12

In *Melendez-Diaz v. Massachusetts* (2009) 557 U.S. 305 (*Melendez-Diaz*), the high court found affidavits reporting the results of forensic analysis on a substance suspected of being cocaine were "testimonial" because they were "functionally identical to live, in-court testimony . . . ." (*Id.* at pp. 310–311 [affidavits denominated as "certificates" and made under declaration or affirmation].)  Then, in *Bullcoming v. New Mexico* (2011) 564 U.S. 647 (*Bullcoming*), the high court found a similarly certified forensic laboratory report prepared by a state laboratory required by law to assist in police investigations on blood alcohol content constituted testimonial statements.  (*Id.* at pp. 652, 665.)

In *Williams v. Illinois* (2012) 567 U.S. 50 (*Williams*), however, a plurality of the high court found testimony by "an expert who testified that a DNA profile produced by an outside laboratory, . . . matched a profile produced by the state police lab using a sample of [the defendant's] blood" did *not* constitute testimonial hearsay.  (*Id.* at p. 56.)  The plurality reached this conclusion on two grounds.  First, the court found the testimony was not admitted to establish the truth of the matter asserted in the report, but only to explain the basis of the expert's independent conclusion.  (*Id.* at pp. 57–58.)  Second, the "the primary purpose of the [laboratory] report, viewed objectively, was not to accuse [the defendant] or to create evidence for use at trial.  When the [ ] lab sent the sample [for testing], its primary

_____

'testimonial.'" (*Davis, supra*, 547 U.S. at p. 836, conc. opn. of Thomas, J.)  "This requirement of solemnity supports my view that the statements regulated by the Confrontation Clause must include 'extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions.' [Citation.]" (*Ibid.*)

13

purpose was to catch a dangerous rapist who was still at large, not to obtain evidence for use against [the defendant], who was neither in custody nor under suspicion at that time." (*Id.* at pp. 84–85.)

Following *Crawford*, *Melendez-Diaz*, *Bullcoming*, and *Williams*, our state Supreme Court reexamined the meaning of "testimonial" in its own collection of cases. (See *People v. Rutterschmidt* (2012) 55 Cal.4th 650; *People v. Lopez* (2012) 55 Cal.4th 569; *People v. Dungo* (2012) 55 Cal.4th 608 (*Dungo*).) Of this trio, *Dungo* is the most pertinent here. In *Dungo*, a forensic pathologist testified about his own opinion on the cause of the victim's death after "reviewing an autopsy report (with accompanying photographs) prepared by [another pathologist] who did not testify and thus could not be confronted by [the] defendant." (*Dungo*, *supra*, at pp. 613–616, 618.) "Neither the autopsy photographs nor [the] autopsy report was admitted into evidence." (*Id.* at p. 615.)

Before analyzing the forensic pathologist's testimony under *Crawford*, the *Dungo* Court noted two "significant points" limiting its inquiry. (*Dungo*, *supra*, 55 Cal.4th at p. 619.) First, the "autopsy report was not introduced into evidence. Thus, we need not decide whether that entire report is testimonial in nature. Second, [the expert's] testimony never described the conclusions in [the] autopsy report as to the cause of [the victim's] death.[6] Thus, we need not determine whether such testimony, if

---

6      The expert who testified, Dr. Lawrence, "did not describe to the jury [the reporting pathologist's] cause of . . . death; instead, he only gave his own independent opinion as a forensic pathologist. Dr. Lawrence did not say whether his description of [the] body at the time of the autopsy . . . was based solely on the autopsy photographs, solely

14

it had been given, would have violated [the] defendant's right to confront [the reporting pathologist]." (*Id.* at pp. 618–619.)

Our Supreme Court then stated, "Although the high court has not agreed on a definition of 'testimonial,' testimonial out-of-court statements have two critical components. First, to be testimonial the statement must be made with some degree of formality or solemnity. Second, the statement is testimonial only if its primary purpose pertains in some fashion to a criminal prosecution." (*Dungo, supra*, 55 Cal.4th at p. 619.)

Addressing both components, the Supreme Court found the autopsy report from which the expert witness testified was not testimonial. First noting the lack of formality and solemnity, the Court reasoned the report simply recorded "objective facts, . . . . They are comparable to observations of objective fact in a report by a physician who, after examining a patient, diagnoses a particular injury or ailment and determines the appropriate treatment. Such observations are not testimonial in nature." (*Dungo, supra,* 55 Cal.4th at pp. 619–620, citing *Melendez-Diaz, supra,* 557 U.S. at p. 312, fn. 2.) Next, the Court found the report's primary purpose was not grounded in criminal prosecution, as the coroner's duty to investigate a suspicious death "is the same, regardless of whether the death resulted from criminal activity," and the report served equally important purposes beyond prosecution. (*Dungo, supra,* at p. 620.)

The Supreme Court reaffirmed these principles in *People v. Sanchez* (2016) 63 Cal.4th 665. There, the Court stated, "Testimonial statements are those made primarily to memorialize facts relating to past criminal activity, which could

_____

on [the] autopsy report, or on a combination of them." (*Dungo, supra,* 55 Cal.4th at pp. 614–615.)

15

be used like trial testimony. Nontestimonial statements are those whose primary purpose is to deal with an ongoing emergency or some other purpose unrelated to preserving facts for later use at trial." (*Id.* at p. 689; see *id.* at pp. 694–696 [police reports and STEP notices compiled during police investigation, authored by investigating officers, and recorded for later use at trial were testimonial in nature].)

In view of these authorities, cases that have recently addressed the nature of a statement relayed at trial considers "who made the statements, under what circumstances, and for what purpose." (*People v. Valencia* (2021) 11 Cal.5th 818, 833, fn. 14 (*Valencia*); *People v. Tran* (2022) 13 Cal.5th 1169, 1197.) With these principles in mind, we independently review whether Dr. Jose's statements about the laboratory report at trial were "testimonial" in violation of defendant's Sixth Amendment right and *Crawford*. (*People v. Ramirez Ruiz* (2020) 56 Cal.App.5th 809, 825.)

>           b.      *Analysis*

Defendant contends Dr. Jose's testimony that the laboratory report on the cultured swab "came back positive for herpes" constituted testimonial hearsay. We disagree.

As in *Dungo*, we note "two significant points" in our analysis. (*Dungo*, *supra*, 55 Cal.4th at p. 618.) First, no portion of the laboratory report was introduced into evidence. Second, it is unclear if Dr. Jose's testimony relayed a particular statement from the report or simply testified about her own conclusion based on statements or data appearing in the report. At most, the testimony reported an objective fact on the detection of the herpes virus. We must therefore determine whether the

16

testimony about this objective fact implicated defendant's right to confront and cross-examine whoever performed the laboratory test. We conclude that it did not.

To begin with, defendant has furnished this court no argument on the formality or solemnity of the laboratory report. From what we can discern in the appellate record, Dr. Jose's medical office received the laboratory report in the normal course of business. Absent an accompanying declaration (*Bullcoming*, *supra*, 564 U.S. at pp. 663–665) or certified statement (*Melendez-Diaz*, *supra*, 557 U.S. at pp. 310–311) by the laboratory technician(s) who performed the test, we find the laboratory report and Dr. Jose's testimony lacking in formality and solemnity.

As to the second component, defendant does not seriously dispute the primary purpose of the laboratory test was for treatment purposes and not criminal prosecution. (See *Melendez-Diaz*, *supra*, 557 U.S. at p. 312, fn. 12 ["medical reports created for treatment purposes . . . would not be testimonial under our decision today"]; accord, *Dungo*, *supra*, 55 Cal.4th at p. 626 [statements made independently to record observations "made as a regular part of the witness's business or profession, even if those observations turn out to be helpful to the prosecution in a particular case," are not testimonial].) When Dr. Jose submitted the culture for testing, S.B. had yet to reveal any sexual abuse by defendant. Defendant may be correct to note the specter of criminal behavior existed at the time Dr. Jose submitted the culture for testing. But that does not mean the primary purpose for the test was for anything but medical treatment. Thus, we conclude any statements relayed by Dr. Jose were not

17

"testimonial" and did not implicate defendant's Sixth Amendment right of confrontation and cross-examination.

 3. *Admission of Dr. Jose's Testimony Was Harmless*

Beyond discussing the requirements attending testimonial hearsay discussed *ante*, the Court in *Sanchez* also clarified the law on case-specific hearsay. Before *Sanchez*, expert witnesses could relate case-specific hearsay, defined as any facts "relating to the [particular] events and participants alleged to have been involved in the case being tried" (*Sanchez*, *supra*, 63 Cal.4th at p. 676), if the jury was informed it could only consider the information for its effect on the expert's opinion and not for its truth. (*People v. Yates* (2018) 25 Cal.App.5th 474, 482 (*Yates*).) *Sanchez* abandoned this "not-admitted-for-its-truth rationale" for case-specific hearsay and held that an expert may no longer "relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception." (*Sanchez*, *supra*, at p. 686; accord, *Valencia*, *supra*, 11 Cal.5th at p. 835.)

Here, the parties agree Dr. Jose relayed case-specific hearsay by testifying about the laboratory results. They disagree, however, on the appropriate standard of prejudice. Defendant asserts the error is subject to *Chapman v. California* (1967) 386 U.S. 18, 24, for violating his Sixth Amendment right under the confrontation clause. The Attorney General contends, and in view of our conclusion *ante*, we agree, the error is subject to state law statutory error under *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*). (See *Valencia*, *supra*, 11 Cal.5th at p. 840.)

To establish prejudicial state law error, the defendant must show under the entire record "it is reasonably probable that a

18

result more favorable to the [defendant] would have been reached in the absence of the error." (*Watson*, *supra*, 46 Cal.2d at p. 836.) Defendant has failed to establish prejudice under this standard.

Defendant provides no argument contesting the factual bases on which he was convicted on each count of sexual abuse, and as a result, he has shown no probability of acquittal. While defendant does challenge the great bodily injury finding on count 4, he offers no persuasive reason to ignore the array of other, undisputed evidence supporting that finding. That evidence established defendant's sexual abuse of S.B. over the course of several years while he was infected with herpes. Shortly after the period of continuous sexual abuse, S.B. presented with symptoms most associated with genital herpes. Two witnesses with experience diagnosing and treating patients with genital herpes opined S.B. contracted herpes on or before July 2019 *without* factoring in the positive laboratory results. (See *People v. Bledsoe* (1984) 36 Cal.3d 236, 249 ["a long line of California decisions . . . permit an expert medical witness to give an opinion of the cause of a particular injury on the basis of the expert's deduction from the appearance of the injury itself"].) Such compelling evidence foreclosed any need for the jury to rely on the laboratory test confirming S.B.'s diagnosis. The erroneous admission of Dr. Jose's testimony about the laboratory report was harmless.

4. *Sufficiency of Evidence of Great Bodily Injury*

Next, defendant challenges the sufficiency of evidence supporting the jury's true finding on the great bodily injury enhancement allegation under sections 667.61, subdivisions (j)(1), (d), and 12022.7.

"In reviewing a sufficiency of evidence claim, the reviewing court's role is a limited one. "'The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]'" [Citations.]" (*People v. Smith* (2005) 37 Cal.4th 733, 738–739.) We do not resolve credibility issues or conflicts in the evidence (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), and if the circumstances reasonably justify the trier of fact's findings, "reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding" (*People v. Covarrubias* (2016) 1 Cal.5th 838, 890).

We conclude substantial evidence supports the finding defendant personally inflicted great bodily injury on S.B. in the commission of continuous sexual abuse in count 4. As the parties agree, infecting a victim with genital herpes or other venereal disease during the commission of a sex offense qualifies as great bodily injury. (*People v. Adames* (1997) 54 Cal.App.4th 198, 210; see *People v. Johnson* (1986) 181 Cal.App.3d 1137, 1140–1141 (*Johnson*) [symptoms of genital herpes includes vesicles and blisters, itching, pain, and long-term complications]; see also *People v. Superior Court (Duval)* (1988) 198 Cal.App.3d 1121, 1131 ["[p]regnancy, abortion, or venereal disease constitute injury significantly and substantially beyond that necessarily present in the commission of an act of unlawful sexual intercourse"].)

Defendant raises two arguments challenging the sufficiency of evidence supporting the infliction of great bodily injury through a herpes infection, neither of which we find persuasive.

a. *Defendant Misconstrues the Requisite Findings for the Great Bodily Injury Enhancement*

First, defendant contends the transmittal of herpes through sexual contact is insufficient to impose a sentence of life without the possibility of parole. In support, he argues under section 667.61, subdivision (k), the prosecution was required to prove he transmitted herpes by use "'of force that is *more than the force necessary to commit the offense.*'" Defendant misconstrues the jury's findings under the relevant statutes.

The information alleged a sentencing enhancement under section 667.61, subdivision (d), and the jury received an instruction on the allegation pursuant to subdivision (d)(6). (CALCRIM No. 3160.) Section 667.61, subdivisions (j)(1), (c), and (d)(6), together mandate a sentence of life imprisonment without the possibility for parole for any person who, in the commission of an enumerated offense, personally inflicts "great bodily injury" on the victim in violation of section 12022.7. One enumerated offense is the continuous sexual abuse of a child (§ 288.5). (See § 667.61, subd. (c)(9).).

Section 12022.7, subdivision (f) defines "great bodily injury" as "a significant or substantial physical *injury*." (Emphasis added.) As such, the "great bodily injury" allegations under sections 667.61, subdivisions (j)(1), (d)(6), and 12022.7, focus on the *result* of a defendant's act, not the *nature* of the act itself. (See *People v. Escobar* (1992) 3 Cal.4th 740, 750 (*Escobar*); *People v. Wyatt* (2012) 55 Cal.4th 694, 702 (*Wyatt*).) Our Supreme Court

21

has found the use of additional force is not required to support a finding of great bodily injury under section 12022.7 (and as expressly incorporated into section 667.61, subdivisions (j)(1) and (d)(6)).  (*People v. Cross* (2008) 45 Cal.4th 58, 65–66, fn. omitted [rejecting argument "that a pregnancy without medical complications that results from unlawful but nonforcible intercourse . . . can never support a finding of great bodily injury"]; accord, *Johnson*, *supra*, 181 Cal.App.3d at p. 1140 [rejecting same argument for the transmission of herpes during sexual intercourse].)

Defendant argues that a different section, section 667.61, subdivision (k)—which was neither alleged nor instructed upon—requires a showing of additional force to justify imprisonment for life without the possibility of parole.  Subdivision (k) of section 667.61 defines the term "bodily harm" as follows:  "As used in this section, 'bodily harm' means any substantial physical injury resulting from the use of force that is more than the force necessary to commit an offense specified in subdivision (c)."  It is undisputed the term "bodily harm" does not appear in 667.61, subdivision (d)(6), the specific subdivision under which the jury found true the great bodily injury enhancement allegation used to sentence defendant to life without possibility of parole.

Other provisions under section 667.61 in which a life sentence may be imposed require the finding of "bodily harm."  For example, subdivision (d)(7) requires a finding "[t]he defendant personally inflicted bodily harm on the victim who was under 14 years of age."  (§ 667.61, subd. (d)(7).)  Although subdivision (d)(7) might sound applicable in this case, it was never charged to the jury as a basis for the enhancement allegation.  The information did not allege a subdivision (d)(7)

enhancement allegation, the jury received no instruction under subdivision (d)(7), and the relevant jury instruction and verdict did not contain the term "bodily harm." Instead, the jury received an instruction under subdivision (d)(6), which required finding defendant "personally inflicted great bodily injury on the victim . . . in the commission of the present offense in violation of" section 12022.7. (Compare § 667.61, subd. (d)(6), and CALCRIM No. 3160 [entitled "Great Bodily Injury (Pen. Code, §§ 667.5(c)(8), 667.61(d)(6), 1192.7(c)(8), 12022.7, 12022.8"].)

Defendant admits there is no case law incorporating the definition of "bodily harm" used in subdivisions (k) or (d)(7) into the "great bodily injury" allegation in subdivision (d)(6). Absent any authority supporting this interpretation, we adhere to the definitions provided in the relevant statutes defining "great bodily injury" as a "significant or substantial injury." (§§ 667.61, subds. (j)(1), (d)(6), 12022.7, subd. (f); see *In re C.H.* (2011) 53 Cal.4th 94, 107; ["[w]henever the Legislature uses different words or phrasing in contemporaneously enacted statutory provisions, a strong inference arises that a different meaning was intended"]; accord, *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1117.) The distinction in definition is significant, as the "great bodily injury" allegations under sections 667.61, subdivisions (j)(1), (d)(6), and 12022.7, focus on the *result* of a defendant's act, not the *nature* of the act itself. (See *Escobar*, *supra*, 3 Cal.4th at p. 750; *Wyatt, supra,* 55 Cal.4th at p. 702.)

23

b. *Substantial Evidence Supports the Finding Defendant Infected S.B. with Herpes During the Commission of Continuous Sexual Abuse*

Defendant also contends there was no evidence S.B. contracted herpes *within* the period of continuous sexual abuse alleged in count 4 (November 17, 2017, and June 25, 2019). The Attorney General contends defendant forfeited this argument by failing to adequately present his argument with supporting legal authority. We agree. (See *People v. Stanley* (1995) 10 Cal.4th 764, 793 [forfeiture principle "is especially true when an appellant makes a general assertion, unsupported by specific argument, regarding insufficiency of evidence"].)

In addition, the Attorney General contends under the materiality of variance doctrine we must disregard any immaterial variance between the pleading and proof of the enhancement allegation. (Citing e.g., *People v. La Marr* (1942) 20 Cal.2d 705, 711 [variance is immaterial when the information "so fully and correctly informs the defendant of the criminal act with which he is charged that, . . . he is not misled in making his defense"].) The Attorney General argues defendant failed to identify any objection to variance between the information and evidence at trial; thus, any objection to such variance has been forfeited. Indeed, it appears the jury received an instruction on this doctrine on various counts—including count 4—to which no objection was raised. (CALCRIM No. 207; see § 955.)[7] Having

---

[7]    CALCRIM No. 207 provided: "As to Count[ ] Four, it is alleged that the crimes occurred between November 16, 2016, and June 25, 2019. The People are not required to prove that the crimes took place exactly on those days but only that they happened reasonably close to those days."

24

failed to address the Attorney General's argument or the cited case law in his reply brief, defendant offers no reason for this court to consider if a material variance between the information and evidence precludes the challenged enhancement.

Were the argument not forfeited, we conclude substantial evidence supports the finding defendant personally transmitted S.B. herpes *within* the period of continuous sexual abuse in count 4. The term "'in the commission of'" an offense for purposes of an enhancement allegation is to be "'broadly construed'" (*People v. Masbruch* (1996) 13 Cal.4th 1001, 1007 (*Masbruch*)) and should not be limited by ""'a matter of semantics or simple chronology'"" (*People v. Jones* (2001) 25 Cal.4th 98, 109). (See e.g., *People v. Frausto* (2009) 180 Cal.App.4th 890, 902 ["[t]emporal niceties are not determinative"].)

When considering the enhancement allegation in this case, "the jury [could rightly] consider a 'video' of the entire encounter; it is not limited to a 'snapshot' of the moments immediately preceding a sex offense." (*Masbruch*, *supra*, 13 Cal.4th at p. 1011.) Here, defendant began sexually abusing S.B. in 2016 long after he had contracted genital herpes. Continuing his sexual abuse of S.B. for three years, defendant engaged in over 20 separate instances of raping, sodomizing, and/or orally copulating S.B. without a condom or other prophylactic measure. Defendant admitted he had genital-to-genital contact with S.B. in May 2019. Despite S.B. reporting herpes lesions and blisters to her mother *after* the period of continuous sexual abuse, the difference in time was minimal (one week), and S.B. had previously exhibited other symptoms consistent with a herpes infection *within* the period of continual abuse. In this regard, S.B. testified her anus would bleed whenever she tried to defecate "[m]aybe months" before she

25

first complained to her mother in July 2019. On these facts, the jury reasonably could find S.B. contracted a herpes infection within the period of continuous sexual abuse alleged in count 4.

## B.     Sixth Amendment Challenge to Consecutive Sentences on Counts 1 and 2

Defendant contends the trial court violated his Sixth Amendment right to a jury trial and *Apprendi v. New Jersey* (2000) 530 U.S. 466 by imposing full, separate, and consecutive sentences on counts 1 and 2. Defendant argues the court imposed these consecutive sentences based on its own findings of fact that each count of sexual intercourse or sodomy with a child occurred on "separate occasions."

In counts 1 and 2, defendant was convicted of sexual intercourse or sodomy with a child (§ 288.7, subd. (a), counts 1–2) between November 16, 2016, and November 16, 2017. During sentencing, the court imposed a term of 25 years to life on count 1 and a full, separate, and consecutive term of 25 years to life on count 2 after finding each offense to be based on separate acts of sexual intercourse or sodomy. In so finding, the court noted "there were numerous incidents" and "occasions that the victim testified to over that . . . period of time."

Imposing sentence on multiple offenses is generally governed by section 1170.1, which allows either a concurrent sentence or consecutive sentence with a principal term and consecutive subordinate term of one-third the middle term. (See § 1170.1.) Under section 667.6, subdivision (d), however, full, separate, and consecutive sentences for enumerated sex offenses are mandatory "if the crimes involve separate victims or involve the same victim on separate occasions." (§ 667.6, subd. (d)(1).)

26

Continuous sexual abuse of a child (§ 288.5) is an enumerated offense.  (§ 667.6, subd. (e)(6).)

In *Apprendi*, the United States Supreme Court held the Sixth Amendment requires a jury finding for any fact, other than a prior conviction, that increases the statutory maximum penalty for a crime.  (*Apprendi*, *supra*, 530 U.S. at p. 476.)  Years later, the high court extended this principle to factual findings that increase the mandatory minimum sentence for a crime.  (*Alleyne v. United States* (2013) 570 U.S. 99, 103 (*Alleyne*).)  However, in *Oregon v. Ice* (2009) 555 U.S. 160 (*Ice*), the high court held *Apprendi* did not apply to facts deemed necessary for imposing consecutive rather than concurrent sentences, "a sentencing function in which the jury traditionally played no part."  (*Id.* at p. 163 [noting *Apprendi* and its progeny extended only to the "offense-specific context that supplied the historic grounding for [those] decisions"].)

While this appeal was pending, our state Supreme Court decided *People v. Catarino* (2023) 14 Cal.5th 748 (*Catarino*).  In *Catarino*, the Court held that "the rule of *Apprendi* and *Alleyne* does not apply to section 667.6(d) under the rationale of *Ice*."  Accordingly, the *Catarino* Court concluded section 667.6(d)'s requirement the trial court impose full, separate, and consecutive terms for certain sex crimes when the court finds they were committed on "separate occasions" complies with the Sixth Amendment.  (*Catarino, supra,* at pp. 750, 755, 757.)

Following *Catarino*, we reject defendant's argument challenging the imposition of full, separate, and consecutive sentences on counts 1 and 2.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

## DISPOSITION

The judgment is affirmed.

MORI, J.

We concur:

CURREY, P. J.

COLLINS, J.